IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 4, 2016

IN RE S.D.D.

Appeal from the Juvenile Court for Haywood County
No. 2014-JV-9238-A    James R. Reid, Judge

_____

No. W2015-02300-COA-R3-PT –Filed July 26, 2016
_____

This case involves an effort to terminate parental rights.  The Department of Children's Services filed a petition to terminate the parental rights of E.D. (Mother) with respect to her child, S.D.D. (the Child).  The trial court found clear and convincing evidence of four grounds supporting termination.  The court also found, by the same quantum of proof, that termination is in the best interest of the Child.  Mother appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS, and ARNOLD B. GOLDIN, JJ., joined.

Bob C. Hooper, Brownsville, Tennessee, for the appellant, E.D.

Herbert H. Slatery III, Attorney General and Reporter, and Kathryn A. Baker, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.**

On January 14, 2014, DCS received notice of allegations that Mother was physically abusing and psychologically harming the Child, who was a little over one month old at the time.  Mother was homeless.  In addition to the claims of physical abuse and psychological harm, DCS also received notice that Mother had made statements about (1) killing the Child; (2) slamming the Child against the wall; (3) burying the Child; and (4) killing herself.  DCS was further notified that Mother routinely left the Child with various individuals and would not feed or change her regularly.  Mother was

suspected of drug abuse, failing to get treatment for her bipolar disorder, neglecting to take her bipolar medication, and recently cutting herself. On January 15, 2014, DCS located the Child at the home of her alleged father.[1] After repeated attempts to make contact with Mother, DCS, one week later, eventually spoke with her. During that conversation, Mother admitted that she had used cocaine in the prior week. She consented to a drug screen, which tested positive for cocaine and THC. A family support team meeting was subsequently held on January 29, 2014, after which a safety plan was created for Mother. The safety plan required her to have an alcohol and drug assessment, participate in the Help Us Grow Successfully (HUGS) program, continue getting treatment for her bipolar disorder through a local rehabilitation center, complete random drug screens, and apply for services through the Department of Human Services.

On February 6, 2014, DCS received notice of new allegations that Mother was physically abusing the Child. At that time, a DCS caseworker saw a video of Mother yelling profanities at the Child. In addition, DCS was informed that Mother had picked the Child up from the floor by one arm and threw her onto a couch. When DCS contacted Mother about these allegations, she refused to cooperate, but she did state that she no longer wanted to take care of the Child. On February 10, 2014, a child and family team meeting was held to discuss placement options for the Child. A second meeting was held on March 5, 2014, at which time a prospective foster family agreed to be a resource for placement of the Child. On March 12, 2014, DCS filed a petition to declare the Child dependent and neglected. After a hearing on March 20, 2014, the record reflects that the Child was taken into DCS custody and began residing with the prospective foster parents. Following another hearing on April 3, 2014, the trial court adjudicated in a July 9, 2014 order that the Child was dependent and neglected.

Two permanency plans were created for Mother. The first plan, ratified by the trial court on July 17, 2014, required Mother to (1) complete an alcohol and drug assessment and follow all recommendations; (2) complete a mental health assessment; (3) continue with individual counseling and medication management; (4) submit to random drug screens; (5) obtain stable housing and income; and (6) complete parenting classes. The second plan, ratified by the trial court on January 15, 2015, had the same requirements as the first plan, but, in addition, it added the requirement that Mother obtain a tuberculosis skin test. Thereafter, DCS referred Mother to parenting classes, which she completed, though the record reflects that she did not consistently attend these classes. In addition, Mother had income through her social security disability and

---

[1] No father was listed on the Child's birth certificate. The record reflects that there were four putative fathers of the Child, but all were later eliminated by DNA testing or due to the fact of incarceration at the time the Child was conceived.

supplemental security income. However, Mother failed to provide documentation that she had completed a mental health assessment, was not compliant with her medication management, neglected to complete an alcohol and drug assessment, did not consistently submit to random drug screens, and did not have stable housing. Furthermore, Mother ceased visiting the Child after a January 7, 2015 supervised meeting.

On April 10, 2015, DCS filed a petition to terminate Mother's parental rights. In the petition, DCS alleged grounds for termination: (1) abandonment due to the dual grounds of her failure to visit or support the Child, said grounds being pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) (2014) and 36-1-102(1)(A)(i) (2014); (2) abandonment as a result of Mother's failure to provide a suitable home pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii); (3) Mother's substantial noncompliance with the permanency plans pursuant to Tenn. Code Ann. §§ 36-1-113(g)(2); and (4) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). A bench trial was held on August 12, 2015. The record reflects that Mother did not attend the trial. On September 8, 2015, the trial court entered an order terminating Mother's parental rights after finding clear and convincing evidence supporting the four grounds alleged by DCS. In addition, the trial court held that there was clear and convincing evidence that termination was in the Child's best interest.

## II.

Mother filed a notice of appeal on October 2, 2015, raising the following singular issue as taken verbatim from her brief:

> Did the Juvenile Court err in finding that it was in the best interests of the children[2] to have their mother's parental rights terminated.

## III.

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re S.M.*, 149 S.W.3d 632, 638 (Tenn. Ct. App. 2004) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)) (internal citations omitted). However, this right is not absolute. *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct.

---

[2] In multiple instances in Mother's brief, she references "children" when discussing the termination of her parental rights. However, the record clearly reflects that only one child is involved in this action. We believe that the reference to "children" was simply a mistake.

App. 2005) (citing ***State Dep't of Children's Servs. v. C.H.K.***, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004)).

Parties seeking to terminate a biological parent's parental rights must prove, by clear and convincing evidence, at least one statutory ground. ***In re Adoption of S.T.D.***, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *3 (Tenn. Ct. App., filed Oct. 30, 2007) (citing Tenn. Code Ann. § 36-1-113(c)(1)). A petitioner also must prove by clear and convincing evidence that termination is in the child's best interest. ***Id.*** (citing Tenn. Code Ann. § 36-1-113(c)(2)). "Clear and convincing evidence is evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002) (internal quotation marks and citation omitted).

The Supreme Court has recently delineated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

***In re Carrington H.***, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

"When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." ***In re Adoption of S.T.D.***, 2007 WL

4

3171034, at *4 (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

**IV.**

This court has previously stated that,

> [t]he ultimate goal of every proceeding involving the care and custody of a child is to ascertain and promote the child's best interests. However, as important as these interests are, they do not dominate every phase of a termination of parental rights proceeding. The best interests of the child do not become the paramount consideration until the trial court has determined that the parent is unfit based on clear and convincing evidence of one or more of the grounds for termination listed in Tenn. Code Ann. § 36-1-113(g).

*In re Audrey S.*, 182 S.W.3d at 877. In the present action, the trial court found, by clear and convincing evidence, the five remaining grounds alluded to earlier in this opinion. On appeal, Mother has not challenged any of these decisions. Nevertheless, we are required to review all of the trial court's findings with respect to grounds and best interest. *In re Carrington*, 483 S.W.3d at 525-26 ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.")

**V.**

**A.**

When analyzing the first ground for termination, abandonment as a result of Mother's failure to visit or support, the trial court concluded the following:

> Mother has not financially contributed to the support of the [C]hild since the [C]hild entered DCS custody on March 20, 2014.

> Mother was aware of her duty to support her child and has not provided a justifiable excuse for failing to support her child.

5

Mother has not visited the [C]hild since January 7, 2015.

Mother was aware of her duty to visit the [C]hild. Mother knew the [C]hild was in foster care and knew how to schedule visits. Mother has made no attempt to visit the [C]hild since January 7, 2015[,] and has provided no justifiable excuse for failing to visit the [C]hild.

Mother was advised on May 19, 2014[,] and October 17, 2014[,] of the criteria for termination of parental rights and that willful failure to visit or contribute to the support of the [C]hild was grounds for termination of parental rights.

DCS made reasonable efforts to assist Mother in visiting her child by providing or assisting with therapeutic supervised visitation and transporting the [C]hild to/from visitation.

The [c]ourt finds by clear and convincing evidence that [Mother] abandoned the [C]hild . . . in that she willfully failed to visit (or visits have been tokens merely to maintain minimal contact) and willfully failed to contribute to the support or make reasonable payments towards the support of said child for more than four (4) consecutive months prior to the filing of this [p]etition and therefore her parental rights are terminated.

(Numbering in original omitted.)

Our review of the record demonstrates that the evidence does not preponderate against the trial court's factual findings on this ground. Tenn. Code Ann. § 36-1-102(1)(A)(i) explains that, for the purposes of terminating parental rights, "abandonment" means:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent . . . of the child who is the subject of the petition for termination of parental rights . . . that parent . . . either [has] willfully failed to visit or [has] willfully failed to support or [has] willfully failed to make reasonable payments towards the support of the child.

6

In the present case, the petition to terminate Mother's parental rights was filed on April 10, 2015.  As a result, the four-month period we must examine in order to establish abandonment by failure to visit and support is December 10, 2014, to April 9, 2015. The record reflects that, despite DCS making reasonable efforts to assist Mother in visiting the Child and Mother being advised on four separate occasions that willful failure to visit the child was a ground for terminating her parental rights, Mother did not visit the Child after January 7, 2015.  Tenn. Code Ann. § 36-1-102(1)(C) defines "token visitation" as "visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation *of such an infrequent nature* or of such short duration as to merely establish minimal or insubstantial contact with the child."  (Emphasis added.)  The only relevant visit definitively shown in this record occurred on January 7, 2015.  One visit during a four-month period certainly qualifies as "infrequent" visitation. Hence, by definition, Mother's visitation was "token" in nature.  We hold, as a matter of law, that the evidence clearly and convincingly demonstrates that Mother willfully failed to visit the Child.

We also conclude that the evidence does not preponderate against the trial court's factual findings regarding Mother's willful failure to support.  This Court has previously explained what constitutes willful failure to support:

> Failure to provide support is willful if the parent is aware of his or her duty to support, is capable of paying support, makes no attempt to provide support, and has no justifiable excuse. Willful conduct is intentional or voluntary; often, intent must be inferred from circumstantial evidence.

*In re Charlie G.C.*, No. E2010-01501-COA-R3-PT, 2011 WL 1166849, at *8 (Tenn. Ct. App., filed Mar. 30, 2011) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT and M2004-01572-COA-R3-PT, 2005 WL 1021618, at *9 (Tenn. Ct. App., filed Apr. 29, 2005)).  In addition, "[e]very parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's obligation to support such parent's child or children."  Tenn. Code Ann. § 36-1-102(1)(H).  The record reflects that Mother received social security disability and supplemental security income.  Nevertheless, the record indicates that Mother has not financially contributed to the support of the Child since the Child entered DCS custody on March 20, 2014.  Mother was born on January 15, 1993, making her well past eighteen years of age when the Child was taken into DCS custody. As a result, Mother is presumed by law to know of her obligation to support the Child. When taking all of these factors into account, we hold, as a matter of law, that the

quantum of evidence clearly and convincingly demonstrates that Mother willfully failed to support the Child.

**B.**

As to the ground of Mother's failure to provide a suitable home, the trial court stated the following:

> The [C]hild was removed from the home of . . . Mother as the result of a [p]etition filed by [the trial court] in which the [C]hild was found to be dependent and neglect[ed] as defined by Tenn. Code Ann. § 37-1-102(12) and the [C]hild was placed in [DCS] custody.
>
> For a period of four (4) months following the removal of the [C]hild from the parent, [DCS] made reasonable efforts to assist . . . Mother to establish a suitable home for . . . the [C]hild, but the parent has made no reasonable efforts to provide a suitable home and has demonstrated a lack of concern for the [C]hild to such a degree that it appears unlikely that Mother will be able to provide a suitable home for the [C]hild at an early date.
>
> DCS made reasonable efforts in the first four (4) months to assist . . . Mother with establishing a suitable home by assisting Mother in scheduling an [alcohol and drug] assessment; administering urine drug screens and hair follicle drug screens; assisting . . . Mother in scheduling a mental health assessment; attempting to maintain regular contact with Mother; and developing a permanency plan to determine tasks and goals for permanency for the [C]hild.
>
> Mother was advised that failure to make reasonable efforts to establish a suitable home for the [C]hild in the first four (4) months the [C]hild was in custody was grounds for termination of parental rights.
>
> The [c]ourt finds by clear and convincing evidence that . . . Mother . . . has abandoned the [C]hild . . . by failure to

establish a suitable home and therefore her parental rights are terminated.

(Numbering in original omitted.)

We hold that the evidence does not preponderate against the trial court's factual findings as to this ground. Tenn. Code Ann. § 36-1-102(1)(A)(ii) explains abandonment as a result of failure to provide a suitable home:

> [F]or a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent . . . to establish a suitable home for the child, but that the parent . . . ha[s] made no reasonable efforts to provide a suitable home and ha[s] demonstrated a lack of concern for the child to such a degree that it appears unlikely that [the parent] will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent . . . in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent . . . toward the same goal, when the parent . . . is aware that the child is in the custody of the department.

In the present action, the Child was taken into DCS custody on March 20, 2014. As a result, the four-month period we must examine in order to establish abandonment by failure to provide a suitable home is March 21, 2014, to July 20, 2014. The record reflects that during those four months, DCS (1) provided Mother with her case manager's contact information with the instructions to call any time she needed assistance; (2) scheduled visitation between Mother and the Child; (3) facilitated visitation by providing transportation for the Child; (4) helped Mother schedule an alcohol and drug consultation; (5) administered drug screens; (6) requested progress reports from Mother's mental health providers; and (7) tried to maintain contact with Mother in order to determine if she required additional services. Meanwhile, during that same period, Mother (1) skipped her initial permanency plan meeting despite having notice of the meeting; (2) failed to maintain consistent contact with DCS and her case manager; (3) did not undergo a tuberculosis skin test, which was a requirement for her to obtain her alcohol and drug assessment; (4) had inconsistent attendance at her parenting classes; (5) missed scheduled visitations with the Child; and (6) stated on multiple occasions that she wanted to surrender her parental rights to the Child. Furthermore, the record also reflects that Mother did not have a stable home during this time period and continued to abuse

9

drugs and alcohol. In light of these facts, we hold, as a matter of law, that the evidence clearly and convincingly demonstrates that Mother has failed to provide a suitable home for the Child.

## C.

When reviewing the third ground for termination – Mother's substantial noncompliance with the permanency plan – the trial court concluded the following:

> The [p]ermanency [p]lans required, among other things, that Mother complete an [alcohol and drug] assessment and follow all recommendations; complete a mental health assessment and follow all recommendations; submit to random drug screens; have stable housing and income; and complete parenting classes.
>
> The permanency plan requirements are reasonable and related to remedying the conditions that necessitated foster care.
>
> Live testimony by [the] DCS Family Service Worker . . . at trial revealed that Mother has not completed an [alcohol and drug] assessment, followed the recommendation of the mental health assessment, complied with individual counseling and medication management, consistently made herself available for random drug screens, or obtained stable housing and/or income.
>
> DCS mad[e] reasonable efforts to assist Mother in complying with requirements of the permanency plan as follows (not an exhaustive list): assisting Mother in scheduling an [alcohol and drug] assessment, administering urine drug screens and hair follicle drug screens; assisting . . . Mother in scheduling a mental health assessment; and attempting to make visits to . . . Mother['s] residence.
>
> Mother was advised that failure to substantially comply with the permanency plans was grounds for termination of parental rights.

The [c]ourt finds by clear and convincing evidence that [Mother] has not substantially complied with the provisions of the permanency plans.

(Numbering in original omitted.)

Based upon our review of the record in this case, we hold that the evidence does not preponderate against the trial court's factual findings on this ground. On the topic of substantial noncompliance, the Supreme Court has previously explained,

> Substantial noncompliance is not defined in the termination statute. The statute is clear, however, that noncompliance is not enough to justify termination of parental rights; the noncompliance must be substantial. *Black's Law Dictionary* defines "substantial" as "[o]f real worth and importance." *Black's Law Dictionary* 1428 (6th ed. 1990). *In the context of the requirements of a permanency plan, the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to the requirement*.

*In re Valentine*, 79 S.W.3d at 548 (emphasis added). As we have already explained in this opinion, the two permanency plans, taken together, collectively required Mother to (1) complete an alcohol and drug assessment and follow all recommendations; (2) complete a mental health assessment; (3) continue with individual counseling and medication management; (4) submit to random drug screens; (5) obtain stable housing and income; (6) complete parenting classes; and (7) obtain a tuberculosis skin test. While Mother completed her parenting classes and did have social security disability and supplemental security income, the record reflects that she (1) failed to complete her alcohol and drug assessment; (2) never provided documentation that she completed a mental health assessment; (3) was not compliant with her medication management; (4) did not consistently submit to random drug screens and continued to use drugs; (5) did not have stable housing; and (6) never obtained a tuberculosis skin test. In our view, the numerous requirements of the permanency plans to which she clearly failed to adhere far outweigh her completion of parenting classes. Accordingly, we hold that, as a matter of law, the evidence clearly and convincingly demonstrates that Mother has not substantially complied with the permanency plan.

## D.

Finally, the trial court held the following with respect to the ground of persistence of conditions:

> The [C]hild has been removed from the custody of [Mother] for more than six (6) months; the conditions which led to the removal of the [C]hild from the home of Mother still exist and other conditions exist which in all probability would cause the [C]hild to be subject to further abuse and/or neglect, making it unlikely that the [C]hild could be returned to Mother's home in the near future; there is little likelihood that these conditions will be remedied at an early date so that the [C]hild can be returned to Mother in the near future.
>
> The continuation of the parent or guardian relationship greatly diminishes the [C]hild's chance of an early integration into a stable and permanent home.
>
> The conditions that prevent the [C]hild's return to [Mother's] home include but are not limited to the following: Mother does not have stable housing and is currently without a permanent residence; Mother continues to test positive for illegal substances when she makes herself available for drug screens; and Mother's non-compliance with services and recommendations.
>
> DCS made reasonable efforts to assist Mother in remedying the conditions that necessitated foster care by providing or assisting with the following, including by not limited to: intensive case management; assisting Mother in scheduling an [alcohol and drug] assessment; administering urine drug screens and hair follicle drug screens; assisting . . . Mother in scheduling a mental health assessment; and attempting to make visits to . . . Mother's place of residence.
>
> The [c]ourt finds by clear and convincing evidence that conditions still exist that prevent the return of the [C]hild to Mother's home.

12

(Numbering in original omitted.)

After reviewing the record in this case, we hold that the evidence does not preponderate against the trial court's factual findings on this ground. Tenn. Code Ann. § 36-1-113(g) authorizes termination of parental rights when:

> (3)(A)  The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and;
>
>> (i)  The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s) still persist;
>>
>> (ii)  There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
>>
>> (iii)  The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

As DCS correctly points out in its brief, Mother's struggles with housing instability, drug abuse, alcohol abuse, and her mental health have persisted since the very start of this case. Despite the repeated efforts by DCS to assist her in rectifying her personal shortcomings, Mother has routinely neglected to address the very issues that led to the termination of her parental rights. Mother's failure to visit the Child in the months prior to trial, which she did not even bother to attend, only exacerbates the situation. In our view, continuation of Mother's parent-child relationship with the Child would greatly hinder the likelihood of the Child being integrated into a safe, stable, and permanent home. Thus, we find that, as a matter of law, the evidence clearly and convincingly exhibits persistence of conditions.

13

## VI.

After finding that there are five statutory grounds warranting termination of Mother's parental rights, we now focus on whether termination is in the Child's best interest. When considering the issue of "best interest," we are guided by the following statutory factors set forth in Tenn. Code Ann. § 36-1-113(i), which provides as follows:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintain regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
>
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol,

14

controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

In the present action, the trial court's September 8, 2015 order terminating Mother's parental rights included the following "best interest" analysis:

> Mother has not made an adjustment of circumstances, conduct or conditions as to make it safe and in the child's best interest to be in the home of the parent.
>
> Mother has failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that lasting adjustment does not reasonably appear possible.
>
> Mother has not maintained regular visitation or other contact with the [C]hild. Mother's visits with the [C]hild are sporadic and unpredictable.
>
> A meaningful relationship has not otherwise been established between the [C]hild and . . . Mother.

15

> Mother's use of alcohol or controlled substances renders her consistently unable to care for the [C]hild in a safe and stable manner.
>
> Mother has shown little or no interest in the welfare of the [C]hild.
>
> The [C]hild is placed with a loving foster family. The [C]hild has remained continuously in the same foster home. The [C]hild is bonded to the foster parents and the foster parents are bonded to the [C]hild. The foster parents love the [C]hild and the [C]hild loves the foster parents. The foster parents are willing to adopt the [C]hild and provide her with a stable, safe and loving home that she can call [her] own and thereby achieve permanency.
>
> The [c]ourt thus finds by clear and convincing evidence that it is in the best interests of the [Child] . . . that the [t]ermination of [p]arental [r]ights [p]etition is granted.

(Numbering in original omitted.) On appeal, Mother notes that she has completed parenting classes, which she contends shows that she "attempted to make a lasting adjustment to her parenting skills." In addition, Mother argues that "a finding of unfitness does not necessarily require that the parent's rights be terminated" and that "[n]ot all parental misconduct is irredeemable." Ultimately, Mother maintains that this "is a case where the best interests finding is one where reasonable persons can differ and does not reach a level of clear and convincing evidence as required by Tennessee law."

We are not persuaded by Mother's argument. While completing parenting classes was a productive step for Mother to take towards addressing her personal shortcomings, this effort hardly outweighs Mother's glaring deficiencies as a parent. The record before us presents an individual that lacks stable housing, has ongoing problems with drugs and alcohol, has neglected addressing mental health issues, has failed to abide by court-ordered directives on multiple occasions, has not financially supported the Child in any way despite a routine source of income through her government benefits, and has not visited the Child in months. As we have already explained, all of these shortcomings are in spite of the efforts DCS has made to help Mother throughout this process. In our view, Mother has failed to make any lasting adjustment in her life that would lead us to conclude it would be in the Child's best interest to keep her parental rights intact. This conclusion is only reinforced by the evidence in the record showing that the Child has

resided in a nurturing home for over two years now with prospective foster parents that love and care for her.  Accordingly, we conclude, as a matter of law, that the trial court was correct in holding that there is clear and convincing evidence that termination of Mother's parental rights is in the Child's best interest.

## VII.

The judgment of the trial court is affirmed.  The costs on appeal are assessed to the appellant, E.D.  This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE